CRAIG CARPENITO
United States Attorney
By:  KATHLEEN ROBESON
Special Assistant United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
Tel:  (973) 645-2700
Fax: (973) 297-2042
Kathleen.Robeson2@usdoj.gov

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Hon.** |
| **v.** | : | **Civil Action No. 18-** |
| **APPROXIMATELY $25,529.00 IN** | : | **VERIFIED COMPLAINT** |
| **UNITED STATES CURRENCY;** | | **FOR FORFEITURE _IN REM_** |
| | : | |
| **Defendant _in rem_.** | : | |

Plaintiff the United States of America, by its attorney, Craig Carpenito,

United States Attorney for the District of New Jersey, for its verified complaint

(the "Complaint") alleges, upon information and belief, as follows:

## I.  NATURE OF THE ACTION

1.      This action is brought by the United States of America seeking the

forfeiture of approximately $25,529.00 in United States currency (the

"defendant currency") seized from a residence located at 1105 Beaver Dam

Road, Point Pleasant Boro, New Jersey, on or about March 14, 2018

(hereinafter referred to collectively as the "Defendant in rem" or the "defendant property").

2.     The Defendant in rem is subject to seizure and forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6), which subjects to forfeiture all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Title 21, Subchapter I, of the United States Code, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of Title 21, Subchapter I, of the United States Code.

3.     The Defendant in rem is also subject to seizure and forfeiture to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(C), which subjects to forfeiture all proceeds traceable to a conspiracy to the sale of contraband cigarettes, contrary to18 U.S.C. § 2342(a), in violation of 18 U.S.C. § 371.

## II.  **JURISDICTION AND VENUE**

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355(a).

5.     Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the District of New Jersey and pursuant to 28 U.S.C. § 1395(b) because the Defendant in rem was seized in the District of New Jersey.

6.     The Defendant in rem is in the custody of the United States.

-2-

## III. DRUG TRAFFICKING ACTIVITY

7.      Drug traffickers often maintain large amounts of United States currency on hand to maintain and finance their ongoing illegal activities, to support business "fronts" – businesses that are created to conceal an individual's illegal activities - pay bills, acquire assets, and make other purchases.  They also frequently keep their drug proceeds in cash to avoid detection and seizure by law enforcement.

8.      Commencing in or about May 2016 and until March 2018, Special Agents from the Newark Field Office of the Federal Bureau of Investigation ("FBI") and members of the South Jersey Violent Incident Gang Task Force (collectively, "law enforcement"), conducted an investigation into the illegal activities of several of the members and associates of the Philadelphia "La Cosa Nostra" ("LCN"), regularly called the "Mafia" or the "Mob," which is a secret criminal organization.  This investigation focused on Philadelphia LCN members operating in and around Atlantic County and Cape May County, New Jersey.

9.      This investigation involved undercover meetings, recorded telephone calls, text messages, controlled purchases of heroin/fentanyl, tramadol, and methamphetamine, and physical and electronic surveillance of Carl Chianese (hereinafter, the "Claimant" or "Claimant Chianese"), Joseph Servidio ("Servidio") and Michael Gallicchio ("Gallicchio").

10.     A confidential source (hereinafter, "CS-1") began providing

-3-

information, based on his personal interactions, to the FBI in 2015. CS-1 is a made member of the Philadelphia LCN, and is personally familiar with numerous other members and associates of the Philadelphia LCN. CS-1 provided law enforcement with detailed information as to the workings of the Philadelphia LCN, including the criminal activity of its members. Law enforcement believes CS-1 to be credible, and the information CS-1 provided has been independently verified through various means, including, but not limited to, telephone record data analysis, database checks, physical surveillance, information received from other law enforcement entities, information received from other confidential sources, and consensually monitored conversations and meetings.

11.     During the course of the investigation, law enforcement also received information from another confidential source (hereinafter, "CS-2") concerning the drug trafficking activities of Servidio, Chianese, and other members and associates of the Philadelphia LCN. CS-2 began providing information, which was also based on his personal dealings, to the FBI in April of 2017. CS-2 has a criminal history involving a felony conviction for drug trafficking. Law enforcement finds CS-2 to be credible, and the information CS-2 provided has been verified through independent means, including, but not limited to, telephone record data analysis, database checks, physical surveillance, information received from other law enforcement entities, information from other confidential sources, and consensually monitored conversations and meetings.

## A. BACKGROUND AND SUMMARY

12.    The Philadelphia LCN is a criminal organization.  The LCN is composed of different families, and each family controls a designated area. Individuals are initiated into the LCN after serving apprenticeships.  The LCN operates as a business, and there is a strict hierarchy in the different families and in the organization.  However, the LCN is not only characterized by vertical chain of command, but also a tribute system.  Within the tribute system, LCN members typically pay money to their superiors.  The Philadelphia LCN historically has operated in Philadelphia, its surrounding suburbs, southern New Jersey – including Atlantic City – and parts of northern New Jersey.

13.    Confidential sources and undercover law enforcement officers (collectively, "UCE"s) have identified Joseph Servidio as a "made member" or "soldier" of the Philadelphia LCN.  Through consensually recorded meetings and conversations, it has been determined that Servidio is distributing heroin/fentanyl, methamphetamine, marijuana, and possibly cocaine.  Servidio has been recorded discussing other criminal activities including bank fraud through a check kiting scheme, potential robberies, an insurance fraud scheme, as well as obtaining firearms to be used in committing these crimes, including in furtherance of his drug trafficking activities.

14.    Chianese, the Claimant, is a known associate of the Philadelphia LCN.  Chianese worked as a drug courier for Servidio in addition to performing other services on Servidio's behalf.

15.    Gallicchio, another known associate of the Philadelphia LCN, is a

supplier of heroin.  Servidio introduced Gallicchio to UCE-1.

## B. FACTUAL ALLEGATIONS

16.    Over the course of the two year investigation, confidential sources and undercover law enforcement officers met with Servidio and his associates many times to either sell or purchase drugs or contraband cigarettes. Chianese was present and actively participated in numerous meetings and drug transactions, some of which are detailed below.   For example, during the course of the conspiracy, Servidio introduced Claimant to UCE-1, and explained that he or she could obtain methamphetamine directly from the Claimant.  Claimant Chianese also met with CS-2 on at least two occasions to discuss separate drug transactions.

*June 8, 2016 Drug Transaction*

17.    On June 8, 2016, CS-1 and UCE-1 had a meeting with multiple members of the Philadelphia LCN, including Individual 1 in Ventor, New Jersey.  During the meeting, Individual 1 discussed with UCE-1, among other things, UCE-1's interest in the transportation and distribution of marijuana. This meeting was audio recorded by UCE-1 and CS-1, and surveilled by case agents.

18.    After the earlier meeting (referenced above in paragraph 17), CS-1 placed an outgoing call to Servidio Phone 3[1] on June 8, 2016, at approximately

---

[1] Servidio, Claimant Chianese, and Gallicchio all used multiple phones from 2016 to 2018 to communicate with each other and other criminal associates about their criminal activity.  FBI agents created an internal system to keep track of the phones that were discovered throughout the investigation and numbered the phones as they were discovered.  For example, "Servidio Phone

10:21 a.m.  During that conversation, CS-1 and Servidio arranged a meeting between CS-1 and UCE-1 with Servidio at Servidio's residence. CS-1 audio recorded this conversation, and analysis of call detail records confirmed it took place. CS-1 and UCE-1 then traveled to Servidio's residence in Marmora, New Jersey. At the residence, CS-1 and UCE-1 met with Servidio, Claimant Chianese, and Gallicchio.

19.     Prior to engaging in conversation inside the residence, all of the individuals placed their cellular telephones on the back deck of the residence. Members of the Philadelphia LCN often avoid the presence of cellular telephones in personal meetings in an attempt to thwart electronic surveillance efforts by law enforcement.

20.     UCE-1 and Gallicchio then had a private conversation in the basement of the residence wherein they discussed Gallicchio's ability to supply heroin. Gallicchio provided UCE-1 with 19 blue colored pills that Gallicchio stated were "heroin" that had been pressed into pill form.  Parts of the conversation are detailed below:

UCE-1: Okay, so you're making these?

_____

1" refers to the first phone that the agents discovered that Servidio used or was associated with him.  Servidio, Claimant Chianese, and Gallicchio all used multiple phones over the course of the investigation and would switch to new phone numbers at different times in an effort to thwart law enforcement's electronic surveillance attempts.  The three would also use some phones exclusively for certain criminal activities with a limited number of associates. This can be seen when Claimant Chianese used Chianese Phone 4 to speak with CS-2, but not Servidio.  Claimant Chianese and Servidio would refer to these cell phones, the cell phones that were used with only a limited number of co-conspirators, as "the office" or the "office phone." Gallicchio also spoke of frequently changing phones and using "throw away" phones.

Gallicchio: Yeah, these are being made, but now, that's what I was trying to explain to him (Servidio), I'm waiting to get the new machine done...

UCE-1: Now are you selling them as oxy's (Oxycodone)?

Gallicchio: They, they say it right on it. Thirties (pills are stamped "30"[2]). Yeah . . . some of them are hit or miss. Some of them are stronger than others.[3]

*December 23, 2016 Drug Transaction*

21.     On December 23, 2016, CS-1 and UCE-1 had a meeting with Servidio and Claimant Chianese at a Garden State Parkway rest stop in Wall, New Jersey. During the meeting, Servidio provided UCE-1 $2,200 in United States currency as payment for stolen cigarettes that UCE-1 had previously supplied to Servidio. Servidio then asked UCE-1 for more stolen cigarettes. After UCE-1 informed Servidio that UCE-1 did not currently have more stolen cigarettes to provide, Servidio stated he wanted two cases of a specific brand of cigarettes every two days that were for "Arabs." Servidio retrieved a cellular phone box and handed it to UCE-1. Servidio informed UCE-1 that the box contained approximately 300 heroin pills. UCE-1 then gave Servidio $3,000 in United States currency as payment for the heroin.

22.     At this meeting, UCE-1 also spoke to Claimant Chianese about conducting future heroin transactions. Claimant provided UCE-1 with

---

[2] Pills obtained in this investigation were stamped, sometimes with the number "30," which mimicked commercially available 30 milligram Oxycodone pills.

[3] Gallicchio's statement that some of the pills are stronger than others is a statement referring to the drug quality and content in the pills.

-8-

telephone number xxx-xxx-0040[4] to be used to arrange future heroin transactions.  UCE-1 and Claimant  also discussed coded language that would be used during these conversations. This meeting was audio recorded by UCE-1, and surveilled by case agents. A portion of the meeting was video recorded. The 305 pills that Servidio supplied were sent to a DEA laboratory.  The laboratory analysis revealed the pills contained heroin and fentanyl. The pills had a net weight of 29.0 grams.

*January 29, 2017 Contraband Cigarette Payments*

23.     On January 29, 2017, CS-1 had a meeting with Servidio at Servidio's residence in Marmora, New Jersey.  During the meeting they discussed Servidio owing money for previously supplied stolen cigarettes and Servidio provided CS-1 with \$3,000 in United States currency.  Servidio also informed CS-1 that Servidio was awaiting money that was "tied up" in a methamphetamine transaction with Claimant Chianese.  Servidio said, "Carl's (Claimant) a fucking liar, schemer . . . he's got like a half a pound a fucking meth of mine, you know."

24.     As discussed in paragraph 14, Servidio used Claimant Chianese as a courier to acquire and deliver drugs, including methamphetamine.  In the statement quoted above, Servidio was saying that Claimant had not yet delivered Servidio's payment of the methamphetamine sale proceeds.  CS-1 audio recorded this meeting.

---

[4] The criminal investigation revealed that Claimant Chianese subscribed to telephone number xxx-xxx-0040, and that this phone number is associated with Claimant's address in Point Pleasant Boro, New Jersey.

*February 1, 2017 Contraband Cigarette Payments*

25.     On February 1, 2017, at approximately 1:00 p.m., CS-1 had a
meeting with Servidio in Ventnor, New Jersey. During the meeting Servidio
requested CS-1's assistance in counting a large quantity of United States
currency, which Servidio later informed CS-1 consisted of the proceeds of a
robbery.  After counting the money and placing it in numerous envelopes,
Servidio gave CS-1 approximately $7,560 to give to UCE-1 for previously
supplied stolen cigarettes.

26.     Individual 1 and Claimant Chianese joined the meeting later. CS-1
observed Servidio supplying Individual 1 and Claimant with envelopes that
contained unknown amounts of cash.  This meeting was not recorded due to a
malfunction of the recording equipment, but was reported to case agents.

*February 17, 2017 Drug Transactions and*
*Contraband Cigarette Payments*

27.     On February 17, 2017, CS-1 and UCE-1 attended a meeting in a
restaurant in Atlantic County, New Jersey, with several members and
associates of the Philadelphia LCN, including Servidio, Individual 1, Claimant
Chianese, and Individual 3. During the meeting, UCE-1 had a private
conversation with Servidio wherein Servidio provided UCE-1 with $6,500 in
United States currency as payment for previously supplied stolen cigarettes.
Further, Servidio explained to UCE-1 that Gallicchio had advised Servidio that
the heroin pills most recently supplied were being reported to be of low quality.
Servidio said, in part: "[W]hatever went bad with that, Michael (Gallicchio) is
going to come down. If you tell me, 'Joe I lost one-hundred-and-fifty of them,'

-10-

you got it. If you tell me you lost the whole three-hundred (300 previously supplied heroin pills), you didn't get paid for any of them, he'll give the whole three hundred." They then discussed that UCE-1 was not going to be in the area for long. Servidio said, "I'll make Carl (Claimant Chianese) run up (to Northern New Jersey) and get them." UCE-1 audio recorded the meeting.

*March 11, 2017 Drug Transaction*

28.   On March 11, 2017, at approximately 10:37 a.m., CS-1 placed an outgoing call to Servidio Phone 3, and CS-1 had a conversation with Servidio. During the conversation CS-1 invited Servidio to a meeting at a restaurant in Atlantic County, New Jersey. This conversation was audio recorded by CS-1 and an analysis of call detail records confirmed it took place. CS-1 then met with several members and associates of the Philadelphia LCN, including Servidio, Individual 3, and others.

29.   CS-1, Individual 3 and Servidio discussed Individual 3 selling heroin pills. Parts of the conversation are detailed below:

CS-1: I don't want you [Individual 3] doing anything unless the cash is there . . . 'cause ultimately I'm responsible, you're with me.[5]

Individual 3: I got to know the figures [prices] . . . let's say I need fifty [pills].

Servidio: Ten dollars.[6]

_____

[5] This statement shows that Individual 3 is associated with CS-1 in the Philadelphia LCN.

[6] This figure ($10) is the price per pill.

-11-

Individual 3: That's what I got to pay. What numbers [size of pill] are they?

Servidio: They're thirties [30 milligrams], they're selling them for sixteen to thirty dollars [per pill].

Individual 3: For a hundred dollars, I get ten [pills].

Servidio: But Carl's (Claimant Chianese) not gonna drive down for ten though." Servidio then suggested that Indiviudal 3 order 100 pills for $1,000.

30.    CS-1 audio recorded the March 11, 2017 meeting.

*April 7, 2017 Drug Transaction*

31.    On April 7, 2017, at approximately 11:45 a.m., UCE-1 met with Servidio at Servidio's residence in Marmora, New Jersey.  During the meeting they discussed future stolen cigarette transactions, and UCE-1 purchasing more heroin pills.  Servidio also informed UCE-1 that Servidio could supply methamphetamine. Servidio said, in part, "[M]eth, I can get you that. I can get you anything you want…its ice, it's all crystal (crystal methamphetamine)." Servidio stated that Claimant Chianese was "sitting on" four ounces of "crystal meth," and that the price for the methamphetamine would be $4,500.

*April 23, 2017 Drug Transaction*

32.    On April 23, 2017, at approximately 9:15 a.m., CS-1 and UCE-1 met with Servidio in Marmora, New Jersey.  After traveling to a restaurant, UCE-1 advised Servidio that the purported methamphetamine that Servidio recently supplied might be bad. CS-1, UCE-1 and Servidio then returned to

-12-

Servidio's residence and a short time later were joined by Claimant Chianese. While in the back yard of the residence Servidio asked Claimant about the recent supply of methamphetamine. Claimant confirmed to Servidio in front of UCE-1 that some of the methamphetamine was being returned. Servidio instructed UCE-1 to return the bad methamphetamine. These meetings were audio recorded by CS-1 and UCE-1 and surveilled by case agents.

*June 11, 2017 Drug Transaction*

33.    On June 11, 2017, UCE-1 and CS-1 met with Servidio at Servidio's residence in Marmora, New Jersey. During the meeting Servidio provided UCE-1 with two packages of a crystal substance purported to be methamphetamine. Parts of the conversation are detailed below:

> Servidio: This mother fucker [the methamphetamine supplier] wouldn't give it to us. I had to fucking buy 'em, so I bought, I bought two the other day, and I bought two yesterday . . . alright, so there's four [ounces of methamphetamine] there.[7]
>
> UCE-1: Yeah. Are you sorted out with this guy (previous methamphetamine supplier), or is he still kinda, I remember you had a problem with that, with that guy . . .
>
> Servidio: Yeah this is different, from somebody else . . .

34.    Servidio discussed the problems he had with Claimant Chianese regarding the return of the sham methamphetamine. Servidio said, "I said,

---

[7]In this statement, Servidio is telling UCE-1 that the methamphetamine supplier would not provide the drugs up front, and therefore Servidio had to "buy" the drugs by paying for them on delivery.

'Carl (Claimant) listen, it's your fuckin' fault, you should pay the fuckin' money to go buy them (the new supply of four ounces of methamphetamine)' . . ." Servidio then suggested that Claimant, who had acted as Servidio's courier and had dealt directly with the methamphetamine supplier when they received the sham drugs, should be the one to pay up front for the current supply.

35.     The crystal substance received from Servidio field-tested positive for the presence of methamphetamine, and was sent to the DEA laboratory for further analysis. The analysis by a DEA forensic chemist established that the submitted substance was methamphetamine, with a net weight of 108.7 grams and a purity of 96%.

*July 26, 2017 Servidio Confesses that His Income*
*Is Entirely Derived from Criminal Activity*

36.     On July 26, 2017, CS-1 had a consensually recorded meeting with Servidio and Individual 4.  During the meeting, Servidio explained that while he maintains a business, it is not profitable.  Servidio said, in part "[W]e need something (income) legitimate, I'm a criminal, everything I do is criminal, I got to get out of it . . . I need like two-hundred fifty thousand ($250,000) a year, or two, to break even. That's what I need. So I got to do other (criminal) things, 'cause I don't make enough money. Ninety percent of my (remodeling/renovation) work is for friends and family, for free . . . I laugh, what did I tell you, why do I keep my company going? 'Cause I got to put the cash (from criminal activity) somewhere. I have to show it (income). How am I paying the mortgage, how am I paying my car payment, how am I paying my insurance, how am I paying my business insurance, how am I paying all these

-14-

other bills . . . last year I robbed an armored car to break even.[8]  What am I gonna do this year . . ."

37.    Servidio then discussed starting, or funding, legitimate businesses in the Atlantic City area, and said, in part, "[W]e don't want, we're not looking to take over the whole town, people don't know, need to know who the fuck we are (Philadelphia LCN), only if they give us a hard time, then we tell them who we are, we push our chest out."  Later in the conversation Servidio said, "(Individual 4), there's nothing better than making money. I make money every day, illegally. I don't want to do this shit."

*Claimant Chianese's Drug Transactions with CS-2*

38.    On August 4, 2017, CS-2 consensually recorded a meeting with Claimant Chianese.  During the meeting Claimant explained that "Mike" recently re-supplied Claimant with pills.  Parts of the conversations are detailed below:

Claimant Chianese: I'm gonna tell you something, they're [pills] strong as can be, I'm scared, I really am.

CS-2: They're strong this time?"

Claimant: So now he [Michael Gallicchio] went out and got good stuff, and he's making them strong, but now it's costing him money.

CS-2: So he wants more than ten [$10 per pill]?

Claimant: No he wants ten, because he's got to get ten.

---

[8] Case Agents are unaware of an armored car robbery in which Servidio is suspected.

39.     Later in the conversation, CS-2 and Claimant discussed Servidio's anger with CS-2 and others over previous drug transactions in which Servidio lost money due to the poor quality of the drugs supplied.  Claimant said, "But he's [Servidio] got to stick his two cents into everything, he just, if he leaves people alone, we make money, but he's got to yell, he's go to stick his two cents in, and, he forgets what phone he's on."

40.     Claimant Chianese was saying that when Servidio gets angry and starts yelling, he talks more openly regarding criminal activity on phones that are subscribed in his name ("he forgets what phone he's on"), rather than discussing those matters on Servidio Phone 4, which Servidio uses exclusively for discussing criminal activity.

41.     On August 18, 2017, CS-2 consensually recorded a meeting with Claimant Chianese.  During the meeting, Claimant described how Gallicchio manufactured pills so that they looked like commercially available Oxycodone. Claimant then provided CS-2 with the telephone number for Chianese Phone 4. Claimant explained, "That's the new number . . . nobody else." CS-2 asked, "This is your new office number?" Claimant said, "This is my new office."

42.     Throughout the investigation Claimant Chianese and Servidio referred to "office" telephones when they want to discuss details of criminal activity. While Claimant communicates with Servidio over Chianese Phone 1 and Chianese Phone 3, he reserved Chianese Phone 2, and later Chianese Phone 4, for communications with other co-conspirators.  Claimant Chianese used multiple phones in an effort to limit law enforcement's ability to gather

evidence through electronic surveillance.  Analysis of data received from a pen-trap device confirmed that the last outgoing communication for Chianese Phone 2 occurred on August 18, 2017.  Claimant replaced Chianese Phone 2 with the Chianese Phone 4, which began service on August 18, 2017.

<em>Claimant Chianese's Criminal Prosecution</em>

43.    On or about March 13, 2018, Claimant Chianese, Servidio, and Gallicchio, were charged by a criminal complaint, filed under seal, in the United States District Court for the District of New Jersey, (Magistrate No. 18-05510-KMW), charging them with conspiring to distribute, and possess with intent to distribute (a) 50 grams or more of methamphetamine; and (b) 100 grams or more of a mixture and substance containing heroin and detectable amounts of mixtures and substances, including fentanyl, and tramadol, contrary to 21 U.S.C. § 841 (b)(1)(A) in violation of 21 U.S.C. § 846.

44.    On or about March 14, 2018, law enforcement officers arrested Claimant Chianese at his residence in Point Pleasant, New Jersey, and the criminal complaint was unsealed.

45.    After his arrest, Claimant gave law enforcement agents verbal and written consent to search his residence.

46.    Law enforcement agents searched the residence and found large amounts of United States currency stored in various locations throughout the apartment.  Agents located an Ocean First Bank envelope in the bedroom containing $6,000 in United States currency in $100 dollar bills.

-17-

47.    Agents then recovered two more Ocean First Bank envelopes from a dresser in the bedroom, each containing a large amount of United States currency.  Law enforcement agents subsequently determined that these two envelopes contained, in total, $12,000.  An Ocean First Bank envelope was found in another dresser in the bedroom.  That envelope was later determined to contain $5,000.

48.    Law enforcement agents then found a wallet on the coffee table in the apartment.  There was a pile of money, totaling $2,529, underneath the wallet.

49.    The defendant currency was seized as property subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), which subjects to forfeiture all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Title 21, Subchapter I, of the United States Code, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of Title 21, Subchapter I, of the United States Code.

50.    The FBI initiated administrative forfeiture proceedings against the Defendant in rem.  On or about May 14, 2018, Chianese filed a claim of ownership with the FBI contesting the forfeiture of the Defendant in rem.

51.    In the claims filed by Claimant Chianese, which were made under oath and subject to the penalty of perjury, Claimant stated that he was the owner of the Defendant in rem.  He claimed that he received $35,000 as part of

his inheritance after his aunt died in 1987, and that after he was released from prison in 2015, his family gave him $25,000 "to get back on [his] feet."

52.    Claimant Chianese has two prior convictions for the distribution of methamphetamine, one from a federal case in this district and another from a federal case in the Middle District of Pennsylvania. In the Middle District of Pennsylvania case, he pleaded guilty and on December 18, 1998, he was sentenced to 262 months' imprisonment, followed by 5 years of supervised release. In the District of New Jersey case, Claimant pleaded guilty to Conspiracy to Distribute Methamphetamine and on January 21, 2000, he was sentenced by the late, Honorable Joseph E. Irenas, United States District Judge, to a total term of imprisonment of 210 months, 198 months to run concurrently with the sentence above and 12 months to run consecutively and with 5 years of supervised release to follow.

53.    On January 12, 2015, Judge Irenas signed an order granting a motion to reduce Claimant's sentence to "time served" after he had served over 17 years and 7 months of his sentence (approximately 77%). The Order was signed and entered on January 12, 2015.

54.    Claimant is currently on supervised released, and is being supervised by the federal probation office.

55.    According to the federal probation office supervising Claimant Chianese, he is currently retired and his only source of income is through Social Security.

-19-

56.     Gallicchio has a prior conviction in the United States District Court for the District of New Jersey (Criminal No. 05-441-2 (JAP)) for conspiring to distribute a controlled substance (oxycodone pills). Gallicchio pleaded guilty and on April 25, 2006, he was sentenced by the Honorable Joel Pisano, United States District Judge, to 108 months imprisonment, to be followed by 3 years of supervised release, and ordered to pay $75,000 in forfeiture to the government. According to Bureau of Prison ("BOP") records, Gallicciho was released from custody on July 29, 2013.

57.     Servidio also has a felony federal drug conviction for the distribution of cocaine. Servidio was arrested in July 2006 and pled guilty to two counts of distribution of a controlled substance (cocaine) in September 2006. On December 13, 2006, Servidio was sentenced by the Honorable William J. Martini, United States District Judge, to 60 months imprisonment, to be followed by 4 years of supervised release. According to BOP records, Servidio was released on or about April 26, 2011.

## IV. CLAIM FOR FORFEITURE

58.     The allegations contained in paragraphs 1 through 57 of this Complaint are incorporated herein and made part hereof.

59.     As a result of the foregoing, the Defendant in rem is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6), because the Defendant in rem constitutes money furnished or intended to be furnished in exchange for a controlled substance or is proceeds traceable to an exchange of

moneys or other things of value furnished in exchange for a controlled substance in violation of Title 21, Subchapter I, of the United States Code.

60.     The Defendant in rem is also subject to forfeiture to the United States of America pursuant to Title 18 U.S.C. § 981(a)(1)(C), which subjects to forfeiture all proceeds traceable to a conspiracy to sell contraband cigarettes, contrary to 18 U.S.C. § 2342(a),  and in violation of 18 U.S.C. § 371.

WHEREFORE, the United States of America requests that the Clerk of the Court issue a warrant for the arrest and seizure of the Defendant in rem pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, which the plaintiff will execute upon the Defendant in rem pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c); that notice of this action be given to all persons who reasonably appear to be potential claimants to the Defendant in rem; that the Defendant in rem be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs and disbursements in this action; and that the Court grant such other and further relief it deems just and proper.

Dated:  Newark, New Jersey
        September 10, 2018

                            CRAIG CARPENITO
                            United States Attorney

                            *s/Kathleen Robeson*
                            By: KATHLEEN ROBESON
                            Special Assistant United States Attorney

-21-

**VERIFICATION**

STATE OF NEW JERSEY         )
COUNTY OF ESSEX             : ss.:
DISTRICT OF NEW JERSEY      )

     Mark Hindle, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation; that he has read the foregoing Verified Complaint; and that the statements contained therein are true to the best of his knowledge, information, and belief.

     The sources of deponent's information and the grounds of his belief include official records and files of the United States, information obtained directly by the deponent, and information obtained by other law enforcement officials and representatives during an investigation of alleged violations of Title 18, United States Code.

                                      Mark R. Hindle
                                      Special Agent
                                      Federal Bureau of Investigation

Sworn to and subscribed before me
this 10    day of September , 2018
at Newark, New Jersey

Jaclyn Wyrwas
Attorney-at-Law of the State of New Jersey

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
        Plaintiff

☐ 2  U.S. Government
        Defendant

☐ 3  Federal Question
        *(U.S. Government Not a Party)*

☐ 4  Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
        Proceeding

☐ 2  Removed from
        State Court

☐ 3  Remanded from
        Appellate Court

☐ 4  Reinstated or
        Reopened

☐ 5  Transferred from
        Another District
        *(specify)*

☐ 6  Multidistrict
        Litigation -
        Transfer

☐ 8  Multidistrict
        Litigation -
        Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
    UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)    Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)    County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)    Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.    Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

2018V00662 /KR/gr
CRAIG CARPENITO
UNITED STATES ATTORNEY
BY: KATHLEEN ROBESON
SPECIAL ASSISTANT UNITED STATES ATTORNEY
970 BROAD STREET, SUITE 700
NEWARK, NEW JERSEY 07102
TEL: (973) 645-2700
FAX: (973) 297-2042
Kathleen.Robeson2@usdoj.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Hon.** |
| **Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | |
| **APPROXIMATELY $25,529.00 IN UNITED STATES CURRENCY,** | : | **WARRANT FOR ARREST _IN REM_** |
| | : | |
| **Defendant _in rem._** | : | |

## TO ANY OFFICER OF THE UNITED STATES DEPARTMENT OF JUSTICE, THE FEDERAL BUREAU OF INVESTIGATION, AND/OR ANY OTHER DULY AUTHORIZED LAW ENFORCEMENT OFFICER:

WHEREAS, a Verified Complaint for Forfeiture _in Rem_ has been filed on September 10, 2018 in the United States District Court for the District of New Jersey, alleging that the defendant property, namely approximately $25,529.00 in United States currency seized from a residence located at 1105 Beaver Dam Road, Point Pleasant Boro, New Jersey, is subject to seizure and forfeiture to the United States for the reasons set forth in the Complaint;

WHEREAS, the defendant property is currently in the possession, custody, or control of the United States;

WHEREAS, in these circumstances, Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure (the "Supplemental Rules"), directs the Clerk of the Court to issue a Warrant for Arrest *in Rem* for the defendant property; and

WHEREAS, Rule G(3)(c)(i) of the Supplemental Rules provides that the Warrant for Arrest *in Rem* must be delivered to a person or organization authorized to execute it, who may be an agent with the United States Department of Justice or any other United States officer or employee; someone under contract with the United States; or someone specially appointed by the court for that purpose.

YOU ARE, THEREFORE, HEREBY COMMANDED to take such steps as are necessary to arrest and detain the defendant property, including, if appropriate, serving a copy of this warrant on the custodian in whose possession, custody, or control the property is currently found; and

YOU ARE FURTHER COMMANDED to use whatever means may be appropriate to protect and maintain the defendant property in your custody until further order of this Court.

IN WITNESS WHEREOF, I, the Clerk of the United States District Court for the District of New Jersey, have caused the foregoing Warrant for Arrest *In Rem* to be issued pursuant to Rule G(3)(b)(i) of the Supplemental Rules.


Dated: _____          _____
                                   Clerk of the Court



                          By:  _____
                                   Deputy Clerk